1  **Danna J. Cotman, Esq. (SB# 188245)**
   danna@arciplaw.com
2  **Ariel J. Sabban, Esq. (SB# 189414)**
   ariel@arciplaw.com
3  **ARC IP Law, PC**
   **5749 La Jolla Boulevard**
4  **La Jolla, CA 92037**
   **Telephone: (858) 729-0800**
5  **Telecopier: (858) 777-5425**

6  Attorneys for Plaintiffs LIFEWAVE, INC.
   and SOLETLUNA HOLDINGS, INC.
7

8                **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION**

| | |
|---|---|
| 10  LIFEWAVE, INC., a Georgia corporation; and SOLETLUNA HOLDINGS, INC., a Georgia corporation, | Case No.: 2:26-cv-02695 |
| 12              Plaintiffs, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR, TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114, COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501, UNFAIR, COMPETITION UNDER 15 U.S.C. § 1125, UNFAIR COMPETITION UNDER B&P §§ 17200 and 17500, AND UNJUST ENRICHMENT** |
| 13        vs. | |
| 14  PAIKESI CLOTHING (SHENZHEN) CO., LTD.,(DBA CHEWSMART), a Chinese limited company; and DOES 1 through 40, inclusive, | |
| 17              Defendants. | **JURY TRIAL DEMANDED** |

20        Plaintiffs LIFEWAVE, INC. ("LIFEWAVE") and SOLETLUNA

21  HOLDINGS, INC. ("SOLETLUNA") (collectively "Plaintiffs"), for their

22  Complaint, allege as follows:

23                       **INTRODUCTION**

24       1.      This is an action for Copyright Infringement of Plaintiffs' federally

25  registered Copyrighted Works, Trademark Infringement of Plaintiffs' federally

26  registered Trademarks, Unfair Competition under the Lanham Act, and Unfair

27  Competition and Unjust Enrichment under California state law.

28       2.      Plaintiffs seek compensatory damages, imposition of a constructive

- 1 -
COMPLAINT

1  trust for improperly acquired profits, injunctive relief, and costs and attorneys'

2  fees.

3      3.    Plaintiffs LIFEWAVE and SOLETLUNA are each corporations

4  organized and existing under the laws of the State of Georgia with their shared

5  principal place of business in San Diego County, California. Plaintiff LIFEWAVE

6  is a Network Marketing Company founded in 2004 that sells a variety of health

7  and wellness products including a line of non-transdermal adhesive patches that

8  are affixed to various points along the body for general health and wellness

9  purposes. Plaintiff SOLETLUNA is an Intellectual Property Holding Company for

10 Plaintiff LIFEWAVE.

11     4.    Plaintiff LIFEWAVE owns the Visual Artistic Work

12 contained within Copyright Registration No. VA0002210260 (the 

13 "Sunflower Design Copyright") for a circular design comprised of

14 patterned dots (shown to the right) (the "Sunflower Design").

15     5.    Plaintiff SOLETLUNA owns and Plaintiff LIFEWAVE is licensed to

16 use and enforce the Visual Artistic Works contained

17 within Copyright Application No. 1-14636405861

18 for the Sunflower Design as incorporated into the

19 internal packaging of the X39 non-transdermal

20 adhesive patch (top right) (the "X39 Sleeve

21 Copyright") and Copyright Registration No. VA0002443303 

22 for the Sunflower Design as incorporated into the external

23 packaging of the X39 non-transdermal adhesive patch (bottom

24 right) (the "X39 Envelope Copyright.") (The Sunflower

25 Design Copyright, the X39 Sleeve Copyright, and the X39 Envelope Copyright

26 are collectively "Plaintiffs' Copyrighted Works").

27     6.    Plaintiff SOLETLUNA owns and Plaintiff LIFEWAVE is licensed to

28 use and enforce the following active trademark registrations in connection with

non-transdermal adhesive patches in International Class 010:

    a. U.S. Registration No. 6,189,074 for the Sunflower Design (the "Sunflower Design Trademark");

    b. U.S. Registration No. 5,928,137 for Sunflower Design beside the stylized words "LIFEWAVE X39" (right) (the "LIFEWAVE X39 And Sunflower Design Trademark.");



    c. U.S. Registration No. 5,285,572 for the word "LIFEWAVE" in standard characters (the "LIFEWAVE Trademark");

    d. U.S. Registration No. 6,038,473 for the word "X39" in standard characters (the "X39 Trademark"); and

    e. U.S. Registration No. 5,928,136 for the words "LIFEWAVE X39" in standard characters (the "LIFEWAVE X39 Trademark"). (The foregoing registrations are collectively "Plaintiffs' Trademarks").

7.    On information and belief, Defendant 派可斯服饰（深圳）有限公司, Romanized as "PAIKESI CLOTHING (SHENZHEN) CO., LTD." ("CHEWSMART") is, and at all times relevant to this action was, a limited company organized and existing under the laws of the People's Republic of China and province of Guangdong with their principal place of business in Bao'an District, Shenzhen, China.

8.    On information and belief, Plaintiffs allege that there is some affiliation or connection between defendant CHEWSMART and certain businesses (form and origination unknown) offering and selling products confusingly similar to Plaintiffs' products over the internet using various websites to do so, including, but not limited to, those using the appellation "AGEDEFY" and "AGEDEFY LABS," and "AGE LIFE CARE," whose true and actual ownership is presently unknown to Plaintiffs, but certain product purchases have been traced back to or

connected with defendant CHEWSMART.

9.     The true names and capacities of defendants sued herein under Code of Civil Procedure ("C.C.P.") § 474 as DOES 1 through 40, inclusive, and each of them, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs will seek to amend this Complaint to set forth the true names and capacities of said fictitiously named defendants when the names and capacities of said fictitiously named defendants have been fully ascertained. Each of the fictitiously named defendants is responsible in some manner for the events and occurrences herein alleged, and Plaintiffs' injuries as herein alleged were directly and proximately caused by the conduct, acts, and/or omissions of said defendants. (Defendant CHEWSMART, and defendants DOES 1 through 40, inclusive, are collectively referred to herein as "Defendants.")

10.     At all times herein mentioned, each of the Defendants, including fictitiously named defendants, was and is the agent, servant, representative, fiduciary, independent contractor, partner, joint venturer, alter ego, accessory, accomplice, aider, abettor, confederate, co-conspirator, and/or employee of each or some of the other co-defendants, and in doing those acts herein referred to, was acting within the scope of their authority as such agent, servant, representative, fiduciary, independent contractor, partner, joint venturer, alter ego, accessory, accomplice, aider, abettor, confederate, co-conspirator and/or employee, with the express and/or implied approval, permission, knowledge, consent and ratification of all said co-defendants.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 15 United States Code ("U.S.C.") § 1121 of the Lanham Act, and under 28 U.S.C. §§ 1338 and 1367.

12.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants provide and provided online retail services to

persons within the State of California and/or have otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

13.    The District of the Central District of California is a proper venue pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this Judicial District.

## GENERAL ALLEGATIONS

14.    On or about December 19, 2024, an entity identifying itself in Roman Characters as Paikesi Clothing (Shenzhen) Co., Ltd., filed a U.S. trademark application for the word "CHEWSMART" in standard characters for, *inter alia*, dietary supplements in International Class 005. Said trademark application was given US Serial No. 98/911,287 (the "CHEWSMART Trademark Application").

15.    On or about January 8, 2025, an unknown individual registered the domain name "chewsmartlab.com" via Alibaba Cloud Computing Ltd. ("HICHINA").  Plaintiffs are informed and believe that they do not have access to any ownership information of these websites through HICHINA as private, but available information reveals that the domain registrant claims to be located in Guandong Province, China, which is the same province where defendant CHEWSMART is located.

16.    At an unknown date thereafter, this unknown individual created a website at said domain name (the "CHEWSMART LAB Website") and opted to use SHOPIFY INC. ("SHOPIFY") as its commerce platform. The CHEWSMART LAB Website included the page chewsmartlab.com/policies/terms-of-service, which includes the following passage: "This website is operated by Paikerlab LLC. Throughout the site, the terms 'we[,]' 'us[,]' and 'our' refer to Paikerlab LLC." On information and belief, "Paikerlab LLC" does not refer to any existing business entity in any jurisdiction.

17.    On or about January 27, 2025, an entity identified as Paikesi Clothing

(Shenzhen) Co., Ltd., filed a trademark application for the word "*PaikerLab*"
stylized in an italicized sans serif font with the lettering "Lab" in bold in
connection with, *inter alia*, dietary supplements in International Class 005. Said
trademark application was given US Serial No. 99/019,080 (the "PAIKERLAB
Trademark Application").

18.     On information and belief, the entity identified as Paikesi Clothing
(Shenzhen) Co., Ltd., who filed the CHEWSMART Trademark Application and
PAIKERLAB Trademark Application, is the true identity of the non-existent
"Paikerlab LLC" on the CHEWSMART LAB Website. Therefore, Plaintiffs are
informed and believe and allege that Paikesi Clothing (Shenzhen) Co., Ltd., is
really defendant CHEWSMART or some iteration or alter ego thereof (and for
purposes of this Complaint defendant CHEWSMART includes "Paikerlab LLC").

19.     By using SHOPIFY as its commerce platform, defendant
CHEWSMART agreed to follow SHOPIFY's Terms of Service, as listed on
shopify.com/legal/terms which includes the following passage: "Posting content
that constitutes an infringement of others' legal rights violates [SHOPIFY's]
Acceptable Use Policy and the content can be removed and/or your Store may be
terminated at [SHOPIFY's] discretion."

20.     On or before July 9, 2025, defendant CHEWSMART added pages on
the CHEWSMART LAB Website at chewsmartlab.com/products/stem-cell-
patches-max, chewsmartlab.com/products/stem-cell-patches, and
chewsmartlab.com/products/stem-cell-patches-pro similarly purportedly selling
Stem Cell patches (the "July CHEWSMART Pages").

21.     On or about July 9, 2025, multiple Brand Partners of Plaintiff
LIFEWAVE reported the above pages on the CHEWSMART LAB Website to
Plaintiffs.

22.     On or about July 15, 2025, Plaintiffs' Counsel sent a series of
Takedown Notices to SHOPIFY pursuant to the Digital Millenium Copyright Act

("DMCA") concerning the material on the CHEWSMART LAB Website that infringed upon Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks.

23.     On or about July 16, 2025, Plaintiffs' Counsel sent a Cease-and-Desist letter via email to support@paikerlab.com and huangxiaoqin@perfectcorset.com concerning the material on the CHEWSMART LAB Website. On information and belief, huangxiaoqin@perfectcorset.com is an email address of Huang Xiaoqin (黄小琴), who is known to Plaintiffs as an associate and former shareholder of defendant CHEWSMART pursuant to entity disclosures made in the People's Republic of China.

24.     On or about July 18, 2025, SHOPIFY sent correspondence to Plaintiffs claiming that all infringing materials had been removed from the CHEWSMART LAB Website pursuant to Plaintiffs' DMCA Takedown Notices.

25.     In reality, after receiving the DMCA Takedown Notices dated July 15, 2025, defendant CHEWSMART changed the July CHEWSMART Pages by removing some, but not all, of the content that infringed upon Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks.

26.     On or about July 21, 2025, Plaintiffs' Counsel contacted a representative of SHOPIFY to discuss further actions. The representative from SHOPIFY told Plaintiffs' Counsel that she should wait for further determinations from SHOPIFY concerning the DMCA Takedowns.

27.     On or about July 30, 2025, Plaintiffs' Counsel provided a Letter of Representation signed by Plaintiffs as requested by SHOPIFY.

28.     On or about August 11, 2025, SHOPIFY confirmed that the July CHEWSMART Pages were removed from the CHEWSMART LAB Website pursuant to the DMCA Takedown Notices.

29.     On an unknown date on or before August 6, 2025, on information and belief, defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, set up a website on tryagedef.com (the "AGEDEFY Website"), using

COMPLAINT

SHOPIFY as its commerce platform and accepting SHOPIFY's Terms of Service as a result.

30.    On or before August 6, 2025, on information and belief, defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, began selling what it advertised as "Stem Cellu [sic] Regen Patches" on the AGEDEFY Website at tryagedef.com/products/stem-cellu-regen-patches (the "AGEDEFY Page"). Said defendants, in a clear and blatant attempt to circumvent Plaintiffs' Intellectual Property rights and remedies, used Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks as training data for Artificial Intelligence ("AI") image generation in order to make what said defendants likely thought would have constituted legally distinct trademarks and works of visual art. (The output of image generation AI trained on Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks is hereinafter the "AI Infringement Images"). The resulting generated images, however, are still derivative works that are colorable imitations of and substantially similar to Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks.

31.    On or about August 6, 2025, multiple Brand Partners of Plaintiff LIFEWAVE reported the AGEDEFY Website and AI Infringement Images therein to Plaintiff LIFEWAVE.

32.    On or about August 7, 2025, Plaintiffs hired a Private Investigator to purchase "Stem Cellu [sic] Regen Patches" from the AGEDEFY Website.

33.    On or about August 18, 2025, Plaintiffs submitted a DMCA Takedown Notice concerning the content on the AGEDEFY Website.

34.    On or about August 20, 2025, Plaintiffs' Private Investigator received the package from the AGEDEFY Website (the "AGEDEFY Package").

35.    The AGEDEFY Package consisted of a small white box, branded with derivative works that are colorable imitations of and substantially similar to Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks. Inside of the box were, on information and belief, water proofing stickers purportedly for "Phototherapy"

COMPLAINT

"Cellu[lar] Regen[eration]" "General Wellness Patch" substantially similar to Plaintiffs' products.

36.    The AGEDEFY Package included a return address of 5744 W. Manchester Avenue, Los Angeles, CA 90045. On information and belief, this is the address of ROBERTS MARKET INC. ("ROBERT'S MEAT MART"), which does not appear to be otherwise related to any of the Defendants in this action.

37.    On or about August 27, 2025, Counsel for Plaintiffs contacted SHOPIFY regarding the DMCA Takedown Notices concerning the content on the CHEWSMART LAB Website and AGEDEFY Website. The representative for SHOPIFY declined to provide Plaintiffs' Counsel with confirmation of any of the Defendants' identity or identities or whether said Defendants were related to each other in any way.

38.    On or about August 21, 2025, and again on or about September 2, 2025, SHOPIFY sent correspondence to Plaintiffs, claiming that all infringing materials had been removed from the AGEDEFY Website pursuant to Plaintiffs' DMCA Takedown Notice.

39.    On or before September 2, 2025, the CHEWSMART LAB Website began selling what are advertised as "Age Reversing Patches" and "Stem Cell Patches." Defendant CHEWSMART opted to create a new webpage at chewsmartlab.com/products/age-reversing-patch (the "September CHEWSMART Page"). Once again, the September CHEWSMART Page used Plaintiffs' Copyrighted Works and Plaintiffs Trademarks as training data for the purpose of generating new derivative works and reusing defendant CHEWSMART's previous AI Infringement Images.

40.    Most blatantly, the September CHEWSMART Page contained an image titled "How to Wear Stem cell patches," which included the following text: "Wear your **X39** patch 12 hours … Throw away the **X39** patch after 12 hours … YOUR WELLNESS. YOUR **LIFEWAVE**," (right below [emphasis added]).

Notably, the LIFEWAVE Trademark and X39 Trademark were incorporated verbatim into what functioned as an advertisement for what was posing as an identical product to Plaintiff LIFEWAVE's non-transdermal adhesive patches.

41.    On or about September 2, 2025, an unknown domain registrant who, on information and belief, is defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, registered the domain name agelifecare.com. Said defendants immediately set up a website at this domain name (the "AGE LIFE CARE website"), opting to use SHOPIFY as its commerce platform (and accepting all applicable terms). Said defendants began selling non-transdermal adhesive patches at agelifecare.com/products/stem-cellu-regen-patches, incorporating a variety of AI Infringement Images and Plaintiffs' Copyrighted Works.

42.    On or about November 14, 2025, an unknown domain registrant who, on information and belief, is defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, registered the domain name trychewsmart.com.

43.    On or about November 14, 2025, on information and belief, defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, set chewsmartlabs.com to redirect to trychewsmart.com. Said defendants set up a nearly identical website on trychewsmart.com (the "TRY CHEWSMART Website"). The TRY CHEWSMART Website opted to use SHOPIFY as its commerce platform (and accepted all applicable terms). The TRY CHEWSMART Website immediately began selling non-transdermal adhesive patches using nearly

identical imagery as was used previously on chewsmartlabs.com which also infringes upon Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks.

44.     On or about November 28, 2025, an unknown domain registrant who, on information and belief, is defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, registered the domain name chewsmartlife.com.

45.     On or about December 1, 2025, Plaintiffs' Private Investigator made test purchases from the AGE LIFE CARE Website and TRY CHEWSMART Website.

46.     On or about December 2, 2025, on information and belief, defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, set chewsmartlabs.com and trychewsmart.com to redirect to chewsmartlife.com. Said defendants set up a nearly identical website on chewsmartlife.com (the "CHEWSMART LIFE Website"). The CHEWSMART LIFE Website opted to use SHOPIFY as its commerce platform (and accepted all applicable terms). The CHEWSMART LIFE Website immediately began selling non-transdermal adhesive patches on chewsmartlife.com/products/age-reversing-patch using nearly identical imagery as prior websites, thereby also infringing upon Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks.

47.     Conspicuously, the CHEWSMART LIFE Website contains the same image described in Paragraph 40 of this Complaint on its product page at chewsmartlife.com/products/age-reversing-patch.

48.     On or about January 7, 2026, Plaintiffs' Private Investigator received packages from the AGE LIFE CARE Website (the "AGE LIFE CARE Package") and the TRY CHEWSMART Website (the "TRY CHEWSMART Package").

49.     The AGE LIFE CARE Package contained a small white box, branded with derivative works that are colorable imitations of and substantially similar to Plaintiffs' Copyrighted Works and Plaintiffs' Trademarks. Inside of the box were, on information and belief, water proofing stickers purportedly for "Wearable

Light Technology" "Cellu[lar] Regen[eration]" "Age Reversing Patch"
substantially similar to Plaintiffs' products.

50.    The AGE LIFE CARE Package included a return address of 8711
Mettler St Los Angeles, California 90003. Further, the USPS GROUND
ADGANTAGE Shipping label created by Defendants includes confirmation that it
was "Mailed from 90003."

51.    The TRY CHEWSMART Package contained a patch sleeve and
instruction manual, branded with derivative works that are colorable imitations of
and substantially similar to Plaintiffs' Copyrighted Works and Plaintiffs'
Trademarks. Inside of the sleeve were, on information and belief, water proofing
stickers purportedly for "Wearable Light Technology" "Stem Cell Patches" "Age
Reversing Patch" substantially similar to Plaintiffs' products.

52.    The TRY CHEWSMART Package included a return address of 5215
S Boyle Ave, Vernon, CA 90058. On information and belief, this is the address of
a facility for CIRRO E-Commerce Europe B.V., which is in some way associated
with Defendants' logistics.

53.    On or about February 1, 2026, the AGEDEFY Website seemingly
removed all references and product pages related to patches.

**I.**

**<u>FIRST CAUSE OF ACTION</u>**

**FOR INFRINGEMENT OF REGISTERED TRADEMARK**
**(15 U.S.C. § 1114)**

**(AS AGAINST DEFENDANT CHEWSMART,**
**AND DOES 1 THROUGH 40, INCLUSIVE)**

54.    Plaintiffs incorporate and reallege by this reference each and every
allegation set forth hereinabove in paragraphs 1 through 53, inclusive.

55.    Plaintiffs' exclusive rights in Plaintiffs' Trademarks predate any
rights that defendant CHEWSMART, and/or defendants DOES 1 through 40,
inclusive, could attempt to establish in and/or to Plaintiffs' Trademarks. Plaintiffs'

Trademarks are fanciful, arbitrary, or otherwise inherently distinctive when used in connection with Plaintiffs' respective goods and services set forth above. Moreover, Plaintiffs' Trademarks identify Plaintiffs as the exclusive sources of the services and/or goods set forth above that are offered under Plaintiffs' Trademarks and, therefore, said marks have acquired further distinctiveness.

56.    Defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, are using Plaintiffs' Trademarks in commerce to advertise, promote, offer for sale, and/or sell said Defendants' wellness related goods, which overlap with and substantially copy Plaintiffs' respective goods related to health and wellness.

57.    Said Defendants' use of Plaintiffs' Trademarks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of said Defendants' competing goods, as alleged herein, has caused, is causing, and is likely to continue causing, customer confusion, mistake, or deception about whether said Defendants and/or said Defendants' competing goods are affiliated, connected, and/or associated with Plaintiffs and/or Plaintiffs' goods as set forth above when they are not.

58.    Said Defendants' use of Plaintiffs' Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of said Defendants' competing goods, as alleged herein, has caused, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' goods originate with, are sponsored, endorsed, or approved by, and/or offered under a license from, Plaintiffs, or vice versa, when they are not.

59.    Plaintiffs have not consented to the use of Plaintiffs' Trademarks by said Defendants.

60.    Based on Plaintiffs' longstanding and continuous prior use of Plaintiffs' Trademarks in United States commerce, the federal registration of

Plaintiffs' Trademarks, and identical replications of Plaintiffs' Trademarks on Defendants' goods, Defendants had actual and constructive knowledge of Plaintiffs' Trademarks when Defendants began using Plaintiffs' Trademarks as part of their bad faith scheme to confuse and deceive customers, as alleged herein.

61.   Said Defendants use of Plaintiffs' trademarks was in furtherance of said Defendants' willful, deliberate, and bad faith scheme of exploiting the extensive consumer goodwill, reputation, and commercial success of goods that Plaintiffs offer under Plaintiffs' Trademarks.

62.   On information and belief, said Defendants have made, and will continue to make substantial profits and gains from their unauthorized use of Plaintiffs' Trademarks, to which said Defendants are not entitled at law or in equity.

63.   On information and belief, said Defendants' acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a). Said Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage to Plaintiffs. Plaintiffs have suffered, and will continue to suffer, irreparable harm from said Defendants' acts and conduct complained of herein unless restrained by judicial decree. Plaintiffs have no adequate remedy at law for the ongoing and repeated violations by said Defendants.

## II.

## SECOND CAUSE OF ACTION

### FOR UNFAIR COMPETITION, FALSE ASSOCIATION, AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

**(AS AGAINST DEFENDANT CHEWSMART, AND DOES 1 THROUGH 40, INCLUSIVE)**

64.   Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 63, inclusive.

65.    The activities of defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, constitute unfair competition, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

66.    Said Defendants' use of Plaintiffs' Trademarks to advertise, market, offer for sale, and/or sell their competing and infringing goods to customers who search on the internet for Plaintiffs and their goods constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

67.    In creating websites containing goods and images that are confusingly similar to Plaintiffs' Trademarks for overlapping categories of goods, said Defendants have falsely and/or misleadingly held themselves out to be agents of and/or authorized by Plaintiffs to sell and/or distribute Plaintiffs' goods, when this is not the case.

68.    Said Defendants' use of Plaintiffs' Trademarks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of Defendants' competing goods is causing, and is likely to continue causing consumer, confusion, mistake, and/or deception about whether said Defendants are Plaintiffs, are affiliates of Plaintiffs, or are licensees or authorized distributors of Plaintiffs' goods when they are not.

69.    Said Defendants' use of Plaintiffs' Trademarks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of Defendants' competing goods, as alleged herein, has caused, is causing, and is likely to continue causing consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' competing goods are affiliated, connected, and/or associated with Plaintiffs and/or Plaintiffs' goods as set forth above when they are not.

70.    Said Defendants' use of Plaintiffs' Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of said Defendants' competing goods, as alleged herein, has caused, is causing,

and is likely to continue causing consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' competing goods originate with, are sponsored, endorsed, or approved by, and/or offered under a license from, Plaintiffs, or vice versa, when they are not.

71.    Plaintiffs have sustained injury and damage caused by the said Defendants' conduct. Plaintiffs have suffered, and will continue to suffer, irreparable harm from said Defendants' acts and conduct complained of herein, unless restrained by judicial decree. Plaintiffs have no adequate remedy at law for the ongoing and repeated violations by said Defendants.

### III.

### THIRD CAUSE OF ACTION

### FOR COPYRIGHT INFRINGEMENT
#### (17 U.S.C. § 501)

#### (AS AGAINST DEFENDANT CHEWSMART, AND DOES 1 THROUGH 40, INCLUSIVE)

72.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 71, inclusive.

73.    Plaintiff SOLETLUNA is the exclusive owner of and Plaintiff LIFEWAVE is exclusively licensed to use and enforce Plaintiffs' Copyrighted Works. Thus, Plaintiffs have the exclusive rights to use Plaintiffs' Copyrighted Works in United States commerce for advertising, promoting, offering for sale, and selling Plaintiffs' respective goods and services set forth above.

74.    Plaintiffs, on information and belief, allege that defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, without authorization have infringed Plaintiffs' Copyrighted Works by using, copying, counterfeiting, distributing, creating derivative works of, publicly displaying, or otherwise exploiting the same based on said Defendants' conduct alleged herein.

75.    On information and belief, said Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of

Plaintiffs' Copyrighted Works and has enabled said Defendants illegally to obtain profits therefrom.

76.    As a direct and proximate result of said Defendants' infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial.

77.    By reason of the copyright infringement described above, Plaintiff is entitled to recover said Defendants' profits to the extent the same are not included as part of Plaintiffs' damages.

78.    Alternatively, Plaintiff is entitled to recover from said Defendants statutory damages up to $150,000 per copyright infringed for said Defendants' willful copyright infringement, plus attorney's fees.

79.    On information and belief, said Defendants' acts and conduct complained of herein constitute copyright infringement in violation of 17 U.S.C. § 501. Said Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage to Plaintiffs. Plaintiffs have suffered and will continue to suffer irreparable harm from said Defendants' acts and conduct complained of herein unless restrained by judicial decree. Plaintiffs have no adequate remedy at law for the ongoing and repeated violations by said Defendants.

## IV.

## FOURTH CAUSE OF ACTION

### FOR UNFAIR COMPETITION
### (CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200)

#### (AS AGAINST DEFENDANT CHEWSMART,
#### AND DOES 1 THROUGH 40, INCLUSIVE)

80.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 79, inclusive.

81.    Plaintiffs allege that defendant CHEWSMART, and/or defendants DOES 1 through 40, inclusive, violated Business and Professions Code ("B&P") § 17200, also known as the Unfair Competition Law ("UCL"), by engaging in

COMPLAINT

unlawful, unfair, and fraudulent business acts and practices to the detriment of the general public. Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair competition. Plaintiffs bring this action for themselves and as a representative action on behalf of the general public pursuant to C.C.P. § 382 and B&P § 17203.

82.    Said Defendants have committed unlawful acts as described hereinabove, unfair acts that offend established public policies including, but not limited to, those reflected by the Lanham Act and Copyright Law, and other fraudulent and deceptive practices as pled hereinabove.

83.    Said unlawful, unfair, and fraudulent acts, and others, allow said Defendants an unfair advantage over their respective competitors who obey the law and engage in fair competition, have deceived and are likely to continue to deceive the general public, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and the general public. Said unlawful, unfair, and fraudulent acts, and others, are ongoing and will continue unless enjoined by this Court which injunction will confer substantial benefits on the class of consumers impacted by said Defendants' wrongdoings.

84.    Plaintiffs will further seek appointment of a receiver, disgorgement, and/or restoration of money and/or property acquired by means of such unfair competition, as well as reasonable attorneys' fees under C.C.P. § 1021.5 and the common fund and/or substantial benefit doctrines.

**V.**

**FIFTH CAUSE OF ACTION**

**FOR UNFAIR COMPETITION**
**(CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500)**

**(AS AGAINST DEFENDANT CHEWSMART,**
**AND DOES 1 THROUGH 40, INCLUSIVE)**

85.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 84, inclusive.

Plaintiffs allege that defendant CHEWSMART, and/or defendants DOES 1
through 40, inclusive, violated B&P § 17500 of the UCA (incorporated by
reference in B&P § 17200) by making and/or disseminating and/or causing to be
made or disseminated before the public false and misleading statements. These
false and misleading statements include, but are by no means limited to, those
contained in the GENERAL ALLEGATIONS section above and the FIRST
through FOURTH causes of action herein, which are hereby incorporated by this
reference. Plaintiffs have suffered injury in fact and have lost money or property
as a result of such unfair competition and false advertising.

## VI.

### SIXTH CAUSE OF ACTION

### FOR UNJUST ENRICHMENT

**(AS AGAINST DEFENDANT CHEWSMART,
AND DOES 1 THROUGH 40, INCLUSIVE)**

86.     Plaintiffs incorporate and reallege by this reference each and every
allegation set forth hereinabove in paragraphs 1 through 86, inclusive.

87.     By engaging in the acts described above, defendant CHEWSMART,
and/or defendants DOES 1 through 40, inclusive, have and will continue to benefit
from their wrongdoing at Plaintiffs' expense and have been unjustly enriched by
reaping the benefits of their unlawful, unfair, and fraudulent activities to the
damage of and irreparable harm to Plaintiffs that said Defendants would not have
otherwise achieved.

88.     The circumstances presented here are such that it would be unjust and
inequitable for said Defendants to retain the benefits received from the actions
described herein without repaying the lost value to Plaintiffs.

### JURY TRIAL DEMANDED

89.     Pursuant to Federal Rules of Civil Procedure, Rule 38, Plaintiffs
demand a trial by jury of all issues so triable in this action.

COMPLAINT

1

### **PRAYER FOR RELIEF**

2       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

3   them, and in favor of Plaintiffs as follows:

4       1.   Enter judgment in favor of Plaintiffs and against all Defendants on all

5   causes of action;

6       2.   Enter a preliminary injunction and a permanent injunction restraining

7   all Defendants and their respective officers, directors, employees, agents, affiliates,

8   successors, assigns, and all those in privity or acting in concert or participation

9   with them, including:

10          a.   That said Defendants, and each of them, cease in any way using,

11               displaying, advertising, copying, imitating, or infringing upon

12               Plaintiffs' Trademarks, or any other trademarks or service marks

13               owned by Plaintiffs;

14          b.   That said Defendants, and each of them, cease in any way using,

15               displaying, advertising, copying, imitating, or infringing upon

16               Plaintiffs' Copyrighted Works, or any other copyrights owned by

17               Plaintiffs;

18          c.   Enjoining said Defendants, and each of them, from using or

19               displaying Plaintiffs' Trademarks, or any other trademarks or service

20               marks owned by Plaintiffs, or confusingly similar variations thereof,

21               in any written or oral advertisements, displays, signs, sales,

22               promotions, reservations, the Internet, or in any other public

23               communication in connection with the sale of said Defendants'

24               products;

25          d.   Enjoining said Defendants, and each of them, from using or

26               displaying Plaintiffs' Copyrighted Works, or any other copyrights

27               owned by Plaintiffs, or confusingly similar variations thereof, in any

28               written or oral advertisements, displays, signs, sales, promotions,

COMPLAINT

reservations, the Internet, or in any other public communication in connection with the sale of said Defendants' products;

 e. Enjoining said Defendants, and each of them, from otherwise infringing upon Plaintiffs' Trademarks and Plaintiffs' Copyrighted Works;

 f. Enjoining said Defendants, and each of them, from misleading consumers and the general public regarding Plaintiffs' Trademarks and Plaintiffs' Copyrighted Works;

 g. Enjoining said Defendants, and each of them, from unfairly competing with Plaintiffs.

3. Enter an order authorizing the impoundment, on such terms as the Court deems reasonable, of all infringing products, labels, packaging, and the means for reproducing said infringing materials in said Defendant's possession or under their control, pending the final disposition of this action;

4. Order said Defendants, and each of them, to account for and pay to Plaintiffs all gains, profits, and savings derived from their unlawful, unfair, and fraudulent business practices;

5. Order said Defendants, and each of them, to pay Plaintiffs the damages sustained by Plaintiffs as a result of their wrongful conduct;

6. Order said Defendants, and each of them, to pay treble damages, enhanced damages, and/or other statutory damages for all claims for relief to which such treble, enhanced, and/or statutory damages are authorized by law;

7. Order said Defendants, and each of them, to pay Plaintiffs their attorney's fees and costs incurred in connection with this action, including, but not limited to, under 15 U.S.C. § 1117, and 17 U.S.C. § 505;

8. Order pre-judgment and post-judgment interest at the maximum legal rate;

9. Order said Defendants, and each of them, to pay Plaintiffs restitution

COMPLAINT

1   for all claims for relief to which restitution is authorized;

2        10.   Order said Defendants, and each of them, to disgorge all improper

3   benefits, profits, and gains;

4        11.   For injunctive relief, appointment of a receiver, restitution,

5   disgorgement, and/or restoration of money and/or property acquired by means of

6   unfair competition pursuant to B&P § 17203; and

7        12.   Order such other and further relief as the Court deems just and proper.

8

9   Dated:  March 13, 2026                    ARC IP LAW, PC

10                                   By:   /s/ Danna J. Cotman
                                          Danna J. Cotman, Esq. (SB# 188245)
11                                        5749 La Jolla Boulevard
                                          La Jolla, CA 92037
12
                                          Attorneys for Plaintiffs
13                                        LIFEWAVE, INC. and SOLETLUNA
                                          HOLDINGS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT